IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BILL ADAMS d.b.a. SNAP TOWING,<br><br>Plaintiff,<br><br>v.<br><br>DAVIS COUNTY, and the DAVIS COUNTY TOWING ASSOCIATION,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS<br><br>Case No. 1:13-CV-111 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant Davis County Towing Association's ("DCTA") Motion to Dismiss[1] and Defendant Davis County's (the "County") Motion for Judgment on the Pleadings.[2] As discussed more fully below, the Court will grant Defendant Davis County's Motion for Judgment on the Pleadings and deny Defendant DCTA's Motion to Dismiss as moot.

I. BACKGROUND

Plaintiff is a tow truck operator located in Kaysville, Utah. Defendant Davis County is a political subdivision of the State of Utah. Defendant DCTA is a corporation located in Davis County with membership comprised of some, but not all, tow truck operators in the county. Plaintiff is not a member of DCTA.

Plaintiff's Amended Complaint asserts antitrust claims arising from the County's use of a towing-rotation list for its towing referrals. Plaintiff alleges that prior to 2011 the County

---

[1] Docket No. 10.

[2] Docket No. 21.

1

excluded from the list any towing companies that were not members of the DCTA. After receiving complaints about the use of that list, Plaintiff was briefly placed back in the towing rotation, while the County ceased relying on the DCTA for its referrals.

In September 2011, the County implemented a new towing-rotation list. To be included on the new list, towing companies were required to submit an application to the County, who then determined whether to accept or reject applicants. Plaintiff alleges that the County continued to work with the DCTA in the creation of the towing-rotation list, and that the process "reflect[s] the requirement previously set forth by the [DCTA]"[3] in addition to imposing "numerous expensive and discriminatory requirements which were not mandated for tow trucks or tow operators by either state or federal law."[4]

Moreover, the County informed towing companies of the requirements for the new rotation list at a DCTA meeting and did not otherwise provide notice to non-members, such as Plaintiff.[5] Plaintiff submitted an application to be included in the rotation in 2012, but was denied.[6]

Plaintiff also alleges that Defendant Davis County has refused to contact Plaintiff even when motorists specifically request Plaintiff's services. Thus, Plaintiff asserts claims against Defendants based on Plaintiff's alleged exclusion from both the consent and non-consent towing markets in the county.

---

[3] *Id.*

[4] *Id.* at 5.

[5] *Id.* at 4.

[6] *Id.* at 5.

Plaintiff filed suit with this Court, alleging claims under the Sherman Act and Utah Antitrust Act. On October 30, 2013, Defendant DCTA filed a Motion to Dismiss. On December 30, 2013, Defendant Davis County filed a Motion for Judgment on the Pleadings. In a separate motion filed on December 30, 2013, Defendant Davis County joined Defendant DCTA's Motion to Dismiss in full.

## II. DISCUSSION

Defendants move to dismiss Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(1) and (6). A challenge to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may take one of two forms. First, a party may bring a facial attack, which "looks only to the factual allegations of the complaint in challenging the court's jurisdiction."[7] Second, a party may bring a factual attack, which "goes beyond the factual allegations of the complaint and presents evidence in the form of affidavits or otherwise to challenge the court's jurisdiction."[8] Because Defendants make a facial attack, the same standard applies to Defendants' 12(b)(1) and 12(b)(6) arguments.[9]

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as

---

[7] *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

[8] *Id.* (citation omitted).

[9] *Id.*

the nonmoving party.[10] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[11] which requires "more than an unadorned, the-defendant-unlawfully harmed-me accusation."[12] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[13]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[14] As the *Iqbal* Court stated,

> [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[15]

Defendants argue that the Court lacks subject matter jurisdiction over this suit because Plaintiff's federal claims are pleaded with insufficient particularity. Defendants contend that Plaintiff's Complaint lacks factual support to demonstrate a nexus between Defendants'

---

[10] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[11] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[13] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[14] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[15] *Iqbal*, 556 U.S. at 679 (citations and internal quotation marks omitted).

4

allegedly illegal conduct and interstate commerce, the existence of an agreement, or an unreasonable restraint of trade. Defendants also argue that federal and state-based immunity doctrines bar Plaintiff's claims.

A. SHERMAN ACT CLAIMS

Section 1 of the Sherman Act states, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."[16] Section 2 states, "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty . . . ."[17]

"When Congress passed the Sherman Act in 1890, it took a narrow view of its power under the Commerce Clause. Subsequent decisions by [the U.S. Supreme Court] have permitted the reach of the Sherman Act to expand along with expanding notions of congressional power."[18] Although "'[l]anguage more comprehensive is difficult to conceive,'"[19] "[t]he jurisdictional inquiry under general prohibitions like . . . the Sherman Act, turning as it does on the circumstances presented in each case and requiring a particularized judicial determination,

---

[16] 15 U.S.C. § 1 (2012).

[17] *Id.* § 2.

[18] *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 743 n.2 (1976).

[19] *Goldfarb v. Va. State Bar*, 421 U.S. 773, 784 (1975) (quoting *United States v. Se. Underwriters Ass'n*, 332 U.S. 533, 553 (1944)).

differs significantly from that required when Congress itself has defined the specific persons and activities that affect commerce and therefore require federal regulation."[20]

"It is now hornbook law that to satisfy interstate commerce jurisdiction under the Sherman Act the challenged activity must occur in the flow of interstate commerce, or, though occurring on a purely local level, substantially affect interstate commerce."[21] In other words, "the jurisdictional requirement of the Sherman Act may be satisfied under either the 'in commerce' or the 'effect on commerce' theory."[22]

Plaintiff's Complaint alleges that "[t]he exclusionary towing rotation is applied on Interstate Highways including Interstate 15 and therefore impacts interstate commerce and interstate travel."[23] Plaintiff also alleges, "The exclusionary towing rotation has a direct effect on interstate commerce through the exclusion of Snap Towing from consent and non-consent towing on interstate highways."[24] Although Plaintiff's allegations both refer to the allegedly unlawful conduct's effect on interstate commerce, out of an abundance of caution the Court will analyze Plaintiff's Complaint under both tests.

*1. In-commerce test*

As the reach of the Commerce Clause has expanded, the utility of the in-commerce test under the Sherman Act has been minimized by the broader scope of the effect-on-commerce

---

[20] *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 197 n.12 (1974).

[21] *Crane v. Intermountain Health Care, Inc.*, 637 F.2d 715, 720 (10th Cir. 1981) (en banc).

[22] *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 242 (1980).

[23] Docket No. 3, at 5.

[24] *Id.* at 6.

test.[25]  "The conceptual distinction between activities 'in' interstate commerce and those which 'affect' interstate commerce has been preserved in the cases, for Congress has seen fit to preserve that distinction in the antitrust and related laws by limiting the applicability of certain provisions to activities demonstrably 'in commerce.'"[26]  For example, certain provisions in the Clayton Act and the Robinson-Patman Act only encompass activities occurring in commerce. As such, the in-commerce test has continued to develop in antitrust cases despite becoming less important in much of the case law applying the Sherman Act.

The U.S. Supreme Court applied the in-commerce test to claims under the Clayton and Robinson-Patman Acts in *Gulf Oil Corp. v. Copp Paving Co.*  The plaintiff in *Gulf Oil Corp.* was a concrete producer who asserted multiple antitrust claims against competitors in the asphaltic concrete market.[27]  The plaintiff's "jurisdictional showing rested solely on the fact that some of the streets and roads in the [applicable market] are segments of the federal interstate highway system, and on a stipulation that a greater than de minimus amount of asphaltic concrete is used in their construction and repair."[28]  The Court concluded that the proximity to the federal highway system was insufficient to satisfy the in-commerce test.  Instead, the in-commerce test "denote[s] only persons or activities within the flow of interstate commerce—the practical,

---

[25] ABA Section of Antitrust Law, *Antitrust Law Developments* 37–38 (5th ed. 2002).

[26] *McLain*, 444 U.S. at 241–42.

[27] *Gulf Oil Corp.*, 419 U.S. at 189–90.

[28] *Id.* at 191.

economic continuity in the generation of goods and services for interstate markets and their transport and distribution to the consumer."[29]

The next year, the Supreme Court applied the in-commerce test to a Sherman Act claim in *Goldfarb v. Virginia State Bar*. *Goldfarb* involved a challenge to minimum-fee schedules for legal services. In particular, the plaintiff challenged the minimum fees required for title examination. The Court found that "the necessary connection between the interstate transactions and the restraint of trade provided by the minimum-fee schedule is present because, in a practical sense, title examinations are necessary in real estate transactions to ensure a lien on a valid title of the borrower."[30] Therefore, the in-commerce test as applied to Sherman Act claims encompasses intrastate "conduct which is an inseparable element of a larger program dependent for its success upon activity which affects commerce between the states.'"[31]

In the instant case, Plaintiff alleges that Defendants' conduct interferes with Plaintiff's participation in the consent and non-consent towing market on interstate highways. Plaintiff has not plausibly pleaded facts demonstrating that Plaintiff's services are, in any practical sense, part of the generation, transport, or distribution of goods or services for interstate markets. Nor has Plaintiff pleaded facts demonstrating that its services are an inseparable element of a larger program dependent for its success on activity that affects interstate commerce.

---

[29] *Id.* at 195.

[30] *Goldfarb*, 421 U.S. at 784 (footnote omitted).

[31] *Id.* at 784–85 (quoting *United States v. Frankfort Distilleries*, 324 U.S. 293, 297 (1945)) (footnote omitted).

Plaintiff's jurisdictional showing rests solely on the premise that because Plaintiff provides towing services on the interstate highway, its business is therefore in interstate commerce. This is precisely the argument rejected in *Gulf Oil Corp.*: "[Plaintiff's] 'in commerce' argument rests essentially on a purely formal 'nexus' to commerce; therefore any conduct of [Defendants] with respect to an ingredient of a highway is per se 'in commerce.'"[32] The Court found that this argument "has no logical endpoint" because "[t]he universe of arguably included activities would be broad and its limits nebulous in the extreme."[33] Most of all, the Court explained, "to the extent that those limits could be defined at all, the definition would in no way be anchored in the economic realities of interstate markets, the intensely practical concerns that underlie the purposes of the antitrust laws."[34] The Court's concerns in *Gulf Oil Corp.* are no less applicable to the suit currently before this Court.

Based on the foregoing, the Court finds that Plaintiff has not met its burden to plead plausible facts demonstrating that Defendant's allegedly unlawful conduct meets the Sherman Act's jurisdictional element under the in-commerce test.

*2. Effect-on-commerce test*

Wholly intrastate activities may fall within the scope of the Sherman Act, so long as those activities substantially affect interstate commerce.[35] The U.S. Supreme Court gave substantial guidance on the contours of the effect-on-commerce test in *McLain v. Real Estate*

---

[32] *Gulf Oil Corp.*, 419 U.S. at 198.

[33] *Id.*

[34] *Id.*

[35] *See Crane*, 637 F.2d at 720.

9

*Board of New Orleans, Inc.* The Court explained that the effect-on-commerce test requires that "[the defendant's] activities which allegedly have been infected by [illegality] be shown as a matter of practical economics to have a not insubstantial effect on the interstate commerce involved."[36] But plaintiffs are not required to "make the more particularized showing of an effect on interstate commerce caused by the alleged [conduct], or by those other aspects of respondents' activity that are alleged to be unlawful."[37] These two statements by the *McLain* Court prompted an as-yet-unresolved circuit split regarding the proper test to be applied.[38]

On one side of the circuit split are those courts that apply a broader articulation of the rule. These courts place emphasis on *McLain*'s explanation that plaintiffs are not required to make a particularized showing as to how the defendant's conduct affects interstate commerce.[39] These courts interpret *McLain* as merely requiring a plaintiff to demonstrate that some aspect of the defendant's general business activities affects interstate commerce.[40]

The Tenth Circuit, however, interprets *McLain* more narrowly.[41] In *Crane v. Intermountain Health Care, Inc.*, an en banc panel of the Tenth Circuit explained that the

---

[36] *McLain*, 444 U.S. at 246 (citation and internal quotation marks omitted).

[37] *Id.* at 242–43.

[38] ABA Section of Antitrust Law, *supra*, at 39.

[39] *Id.*

[40] *See, e.g.*, *United States v. ORS, Inc.*, 997 F.2d 628, 629 n.4 (9th Cir. 1993) ("[T]he government need only allege that ORS's business activities have a substantial effect on interstate commerce, not the 'more particularized showing' that the alleged illegal conduct has a substantial effect on interstate commerce (quoting *McLain*, 444 U.S. at 242–43)).

[41] *See Anesthesia Advantage, Inc. v. Metz Grp.*, 912 F.2d 397, 400–01 (10th Cir. 1990) (footnote omitted) (discussing circuit split and collecting cases, including those from other circuit courts agreeing with the Tenth Circuit's interpretation).

Sherman Act's jurisdictional element requires a plaintiff to demonstrate that the allegedly unlawful activity itself affects interstate commerce.[42] As for *McLain*'s statement concerning the particularity of the showing required, *Crane* explains, "an elaborate analysis of interstate impact is not necessary at the jurisdictional stage, only an allegation showing a logical connection as a matter of practical economics between the unlawful conduct and interstate commerce."[43] Thus, in the Tenth Circuit "the plaintiff must (1) identify a 'relevant aspect of interstate commerce, and (2) specify its relationship to the defendant's activities alleged to be 'infected' with illegality."[44] "[I]t is not sufficient merely to rely on identification of a relevant local activity and to presume an interrelationship with some unspecified aspect of interstate commerce."[45]

Additionally, "[t]he determination of whether an activity has a 'substantial effect' on interstate commerce cannot be determined with mathematical nicety."[46] "[A]n elaborate analysis of interstate impact is not necessary at the jurisdictional stage, only an allegation showing a logical connection as a matter of practical economics between the unlawful conduct and interstate commerce."[47]

---

[42] *Crane*, 637 F.2d at 723.

[43] *Id.*

[44] *Id.*

[45] *McLain*, 444 U.S. at 242.

[46] *Lease Lights, Inc. v. Pub. Serv. Co. of Okla.*, 701 F.2d 794, 798 (10th Cir. 1983).

[47] *Anesthesia Advantage*, 912 F.2d at 401; *see also McLain*, 444 U.S. at 242–43 ("Petitioners need not make the more particularized showing of an effect on interstate commerce caused by the alleged [conduct], or by those other aspects of respondents' activity that are alleged to be unlawful.").

> [T]here is no bright line dividing cases in which the effect upon interstate commerce is sufficient to permit Congress to prohibit particular anticompetitive activity under the commerce clause from those cases in which it is not sufficient. In this area, perhaps more than in most, each case must turn on its own facts. As the limits of Congress' power to regulate interstate commerce are approached, deciding the category in which a particular case falls becomes a matter of degree.[48]

Being a fact-specific inquiry, the Court begins its effect-on-commerce analysis by reviewing decisions from other courts involving similar factual scenarios—antitrust claims asserted by towing companies providing services on interstate highways. Defendant urges the Court to adopt the United States District Court for the District of Kansas's analysis in *J & D Automotive, Inc. v. A & A Tow Service, Inc.*,[49] whereby that court concluded that a towing company's exclusion from a towing-rotation list did not sufficiently affect interstate commerce to satisfy the Sherman Act's jurisdictional element.

In *J & D Automotive*, a towing company asserted Sherman Act claims against competing towing companies and the City of Kansas City based on Plaintiff's claim that the city's towing-rotation list was monopolistic. The record before the court indicated that all of the towing services at issue in the case originated in Kansas City and that each car was towed to a storage lot in the city. Although *J & D Automotive* did not involve explicit allegations that the towing-rotation list was applied on an interstate highway, the plaintiff did allege that the list was used throughout Kansas City's metropolitan area—which the Court notes includes interstate highways

---

[48] *Crane*, 637 F.2d at 727 (quoting *Rasmussen v. Am. Dairy Ass'n*, 472 F.2d 517, 526–27 (9th Cir. 1972)).

[49] No. 84-2329, 1987 U.S. Dist. LEXIS 846 (D. Kan. Jan. 30, 1987).

and straddles the border between Kansas and Missouri, extending into both states. Yet, the court concluded that the wholly intrastate towing services did not satisfy the effect-on-commerce test.

The United States District Court for the Southern District of Texas reached the same conclusion in *Walker County Wrecker & Storage Ass'n v. Walker County*.[50] *Walker County* included Sherman Act claims brought by a county towing association on behalf of its members against the county, based on the county sheriff's decision to refer all towing business to a single company. The court tersely dismissed plaintiff's Sherman Act claims by stating, "Plaintiffs claim interstate commerce is affected since some of the towing originated on an interstate highway. This tenuous allegation is insufficient to sustain a claim under the Sherman . . . Act[]."[51]

In *Kendrick v. City Council of Augusta, Georgia*,[52] the United States District Court for the Southern District of Georgia also dismissed a Sherman Act claim relating to towing services for failure to allege sufficient facts to satisfy the jurisdictional element. *Kendrick* involved, among others, a Sherman Act claim asserted by a towing company who lost a bid with a municipality. In particular, the court explained that plaintiff provided no basis on which to conclude that the jurisdictional element had been satisfied. "The place of business of all the prospective bidders was in the State of Georgia, and . . . all automobiles towed would necessarily be located with the City of Augusta limits."[53] The *Kendrick* court did not discuss this point, but

---

[50] 604 F. Supp. 28 (S.D. Tex. 1984).

[51] *Id.* at 30.

[52] 516 F. Supp. 1134 (S.D. Ga. 1981).

[53] *Id.* at 1140.

this Court also notes that the City of Augusta is on the Georgia-South Carolina border, and contains an interstate highway, I-20.

*J & D Automotive*, *Walker County*, and *Kendrick* all involve towing referral business conducted on interstate highways, and three federal courts concluded that this was insufficient to demonstrate the jurisdictional element of a Sherman Act claim. These cases support Defendants' position that the application of the towing-rotation list on I-15 is inadequate, on its own, to establish subject matter jurisdiction in this case.

Other federal courts have reached the opposite conclusion. In *Cowan v. Corley*,[54] the Fifth Circuit discussed a Houston, Texas towing company's Sherman Act claim arising from towing services provided on interstate highways.[55] The towing company asserted that the county sheriff favored certain companies over others when implementing the county's towing-rotation system, thereby restraining trade in the market. The court stated that "[i]t cannot be gainsaid that travel to and through Texas involves interstate commerce."[56] In particular, "[a]ctions directly relating to the competitive pricing, marketing, and furnishing of towing services to the interstate vehicular movement of people and goods through Montgomery County, substantially affect interstate commerce."[57]

---

[54] 814 F.2d 223 (5th Cir. 1997).

[55] *Id.* at 225.

[56] *Id.* at 226.

[57] *Id.*

The United States District Court for the District of Colorado adopted *Cowan*'s analysis and applied it to a different type of business in *Crabtree v. State of Colorado*.[58] In *Crabtree*, the plaintiff—a highway construction business—asserted Sherman Act claims against, among others, the State of Colorado based upon highway construction contracts. The court summarily concluded, without substantive discussion, that because plaintiffs were "engaged in the highway construction business" and because some of the construction was federally funded, the jurisdictional element was met.

The holdings in *J & D Automotive*, *Walker County*, and *Kendrick* as compared to the holdings in *Cowan* and *Crabtree* reveal a fundamental disagreement between the courts that decided those cases. *Cowan* and *Crabtree* conceive of interstate highways as being so fundamentally emblematic of interstate commerce that any conduct touching upon the interstate highways necessarily affects interstate commerce. *J & D Automotive*, *Walker County*, and *Kendrick*, however, are not so willing to assume that economic activity affects interstate commerce simply because it happens to touch upon roads that eventually extend across state borders.

The Court is not convinced that the simplistic premise underlying *Cowan* and *Crabtree* is correct. The towing services at issue in this case—and in *J & D Automotive*, *Walker County*, *Kendrick*, and *Cowan*—originate on the side of the interstate highway and terminate at a local towing yard. It is not clear how a towing company's proximity to the interstate highway affects interstate commerce, thereby bringing otherwise wholly intrastate activity into the reach of federal antitrust laws. Plaintiff is located in Davis County and has not alleged that its service

---

[58] No. 88-C-1012, 1989 WL 91119 (D. Colo. Aug. 9, 1989).

area extends across state boundaries. Rather, Plaintiff is involved in wholly intrastate activity—towing disabled vehicles from the interstate highway in Davis County to a local towing yard. Without a specific factual connection between the towing services being performed and interstate commerce, the Court is not convinced that the presence of the interstate highway is adequate on its own to create federal jurisdiction. As the *McLain* Court warned, courts may not presume the nexus between a local activity—such as intrastate towing of automobiles—and interstate commerce. In the instant case, Plaintiff asserts no facts to demonstrate a nexus between interstate commerce and Defendant's use of a towing-rotation list used to refer towing companies to perform wholly local towing services.

This Court has previously dismissed complaints for failing to allege a sufficient nexus between the challenged activities and interstate commerce when the complaints contained no mention of interstate commerce.[59] Here, Plaintiff's Amended Complaint mentions interstate commerce, but only superficially. Plaintiff alleges that "[t]he exclusionary towing rotation is applied on Interstate Highways including Interstate 15 and therefore impacts interstate commerce and interstate travel."[60] Plaintiff also alleges that "[t]he exclusionary towing rotation has a direct effect on interstate commerce through the exclusion of [Plaintiff] from consent and non-consent towing on interstate highways."[61] These conclusory statements provide no factual basis for the

---

[59] *See Park City Mun. Corp. v. Bureau of Reclamation*, No. 1:09-CV-144 TS, 2010 WL 4568687, at *5 (D. Utah Nov. 3, 2010); *U.S. Gen., Inc. v. Draper City*, No. 2:05-CV-917 TS, 2006 WL 1594184, at *2 (D. Utah Jun. 7, 2006).

[60] Docket No. 3, at 5.

[61] *Id.* at 6.

Court to determine what aspect of interstate commerce is at issue in this suit, or that Defendants' allegedly illegal conduct has a nexus with that aspect of interstate commerce.

Even if the Court were to assume that Plaintiff pleaded facts demonstrating a nexus between a relevant aspect of interstate commerce and Defendants' allegedly unlawful conduct, Plaintiff also has not pleaded facts demonstrating that Defendant's conduct has a not insubstantial effect on interstate commerce. As explained above, Plaintiff has pleaded no facts demonstrating any actual effect on interstate commerce, much less a not insubstantial effect.

Based on the foregoing, the Court finds that Plaintiff has not pleaded facts sufficient to demonstrate a nexus between a relevant aspect of interstate commerce and Defendants' allegedly unlawful conduct or that the Defendants' challenged conduct has a not insubstantial effect on interstate commerce based on practical economics. Having concluded that Plaintiff failed to satisfy the jurisdictional element of both Sherman Act claims, the Court will not reach the remaining arguments advanced by the parties.

The Court will dismiss both of Plaintiff's Sherman Act claims without prejudice, to allow Plaintiff the opportunity to allege facts demonstrating the requisite nexus between the challenged conduct and a relevant aspect of interstate commerce, and a not insubstantial effect on interstate commerce.

B. REMAINING CLAIMS

Having concluded that the Court lacks subject matter jurisdiction over both federal claims, the Court must reevaluate its jurisdictional authority over this suit. Under *United Mine Workers v. Gibbs*,[62] "a federal court can retain jurisdiction following dismissal of all federal

---

[62] 383 U.S. 715 (1966).

claims if the remaining state claims derive from the same common nucleus of operative facts and a plaintiff would ordinarily be expected to try all of them in one proceeding."[63] However, "[e]ven where a 'common nucleus of operative fact' exists, federal jurisdiction is not mandatory over pendent claims or parties."[64] Federal district courts may decline supplemental jurisdiction in certain situations, including when "the claim raises a novel or complex issue of State law, [or] . . . the claim substantially predominates over the claim or claims over which the district court has original jurisdiction."[65] "[T]he Supreme Court repeatedly has determined that supplemental jurisdiction is not a matter of the litigants' right, but of judicial discretion."[66] Because the remaining claims in this case involves complex issues of state law, the Court will decline to exercise supplemental jurisdiction.

### III. CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Defendant Davis County's Motion for Judgment on the Pleadings (Docket No. 21) is GRANTED without prejudice. It is further

ORDERED that Defendant DCTA's Motion to Dismiss (Docket No. 10) is DENIED as moot.

---

[63] *Bank of Okla., N.A., Grove Branch v. Islands Marina, Ltd.*, 918 F.2d 1476, 1479–80 (10th Cir. 1990) (citing *Gibbs*, 383 U.S. at 725).

[64] *Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1165 (10th Cir. 2004).

[65] 28 U.S.C. § 1367(c) (2012).

[66] *Estate of Harshman*, 379 F.3d at 1165 (citing *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997); *Gibbs*, 383 U.S. at 726).

DATED this 7th day of July, 2014.

BY THE COURT:

_____
Ted Stewart
United States District Judge